**Lewis J. HART, Jr., Plaintiff,**

v.

**CANADIAN IMPERIAL BANK OF COMMERCE, CIBC, Inc., CIBC Wood Gundy Securities, Inc., CIBC Wood Gundy Securities Corp. and CIBC Oppenheimer Corp. (Successor in Interest to CIBC Wood Gundy Securities, Corp.), Defendants.**

No. 98 CIV 4068 (WCC).

United States District Court,
S.D. New York.

March 26, 1999.

Brinton & January, White Plains, NY (Robert L. Brinton, Clayton S. Byrne, of Counsel), for Plaintiff.

Skadden, Arps, Slate, Meagher & Flom LLP, New York City (Jay S. Berke, Carl G. Guida, of Counsel), for Defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

In this employment discrimination action, plaintiff Lewis J. Hart, Jr. ("Hart") asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. and the Age Discrimina-

tion in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., as well as various state contract and tort claims against the defendants. Defendants move to dismiss Count V of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and, simultaneously, for an order pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. staying this action and compelling arbitration of all causes of action not dismissed by the Court. For the reasons discussed below, defendants' motion to compel arbitration and to stay judicial proceedings pending such arbitration is granted. The Court reserves decision on defendants' motion to dismiss.

## BACKGROUND

The following facts are undisputed. In 1990, plaintiff commenced his employment with defendant CIBC, Inc.[1] as a Vice President and Director. Hart was hired to develop the company's capabilities in the area of electric power financing and related advisory services. He was promoted to Managing Director of CIBC, Inc. in 1992 and then to Co–Head of the Global Power Group in 1995. As Co–Head of the Global Power Group, Hart was responsible for developing and implementing a plan to turn CIBC Wood Gundy Securities, Corp. ("Wood Gundy Corp.") into a full-service provider of investment banking services and products in the global power industry. To this end, in or about January of 1996, Hart was asked to serve as Managing Director of Wood Gundy Corp., the American investment banking/brokerage subsidiary of the Bank.[2]

As Managing Director of Wood Gundy Corp., Hart was required by the NASD and NYSE Rules to take the Series 7 examination and register with the NASD and NYSE.[3] Plaintiff passed his Series 7 exam on March 7, 1996, and registered with the NASD and NYSE by signing a Uniform Application for Securities Industry Registration or Transfer, commonly referred to as a Form U–4. Under a caption warning that **"THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY"** paragraph 5 of the Form U–4 provides:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in item 10 [here the NASD and NYSE] as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgement in any court of competent jurisdiction.

On October 29, 1997, plaintiff's employment with Wood Gundy Corp. was terminated, allegedly for performance reasons.

Plaintiff filed charges with both the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR"), and received a "Notice of Right to Sue" dated May 28, 1998. On June 8, 1998, Hart filed the complaint in this action alleging claims of: (i) age discrimination in violation of the ADEA; (ii) national origin discrimination under Title VII; and other claims entitled (iii) breach of implied contract; (iv) breach of course of dealing contract to pay bonus; (v) attempt to force

---

1. CIBC, Inc. is a wholly-owned subsidiary of a non-party corporation named CIHI. CIHI is a subsidiary of defendant Canadian Imperial Bank of Commerce (the "Bank"), a Canadian financial services company with a principal place of business in Toronto, Ontario, Canada.

2. Unlike CIBC, Inc., Wood Gundy Corp. was a member of the National Association of Se-

curities Dealers, Inc. ("NASD") and a member organization of the New York Stock Exchange ("NYSE").

3. Hart notes that he also took and passed the Series 63 exam and registered for, but never took, the Series 24 exam. (Hart Aff. ¶¶ 17–19).

plaintiff into arbitration; and (vi) damage to plaintiff's reputation, against his former employers, CIBC, Inc. and Wood Gundy Corp. and their parent corporation, the Bank.[4]

At the time Hart signed his Form U–4 and when he filed the instant complaint, the NASD and NYSE rules provided for compulsory arbitration of employment related disputes, including statutory discrimination claims. Accordingly, on October 15, 1998, defendants moved to dismiss Count V of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and, simultaneously, for an order pursuant to Section 3 of the FAA, staying this action and compelling arbitration of all causes of action not dismissed by the Court. Since then, the Securities and Exchange Commission ("SEC") has approved changes to NASD and NYSE arbitration rules creating an exception to mandatory arbitration of employment disputes. According to the amendments, arbitration of statutory employment discrimination claims may only be compelled if the parties agreed to arbitration after the dispute had arisen. The NASD rule change went into effect January 1, 1999 and applies to claims filed on or after that date. *See* SEC Release No. 34–40109, 63 Fed.Reg. 35299, 1998 WL 339422. The NYSE rule change was approved by the SEC on December 29, 1998 and is silent on the issue of retroactivity. *See* SEC Release No. 34–40858, 64 Fed. Reg. 1051, 1999 WL 3315.

## DISCUSSION

The Second Circuit has enumerated the following factors to be considered when deciding whether to compel arbitration: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) whether Congress intended the plaintiff's statutory claims to be nonarbitrable; and (4) if not all claims are arbitrable, the court must determine whether to stay the balance of the proceedings pending arbitration. *See Bird v. Shearson Lehman/American Express, Inc.,* 926 F.2d 116, 118 (2d Cir.1991) (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844 (2d Cir.1987)).

### I. *Plaintiff's Agreement to Arbitrate*

■ It is well established that a signed Form U–4 constitutes an express arbitration agreement enforceable under the FAA. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 22–25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Haviland v. Goldman, Sachs & Co.,* 947 F.2d 601, 604 (2d Cir.1991). Plaintiff does not deny that he signed a Form U–4; however, he claims that the arbitration agreement is unenforceable because it was signed under duress and was the result of unequal bargaining power.[5] Further, he alleges that the waiver of his federal forum rights was neither voluntary or knowing as required by federal law.

### A. *Coercion or Duress*

■ To establish duress or coercion plaintiff must show: "(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative." *Kamerman v.*

---

4. Also named as defendants are: (i) CIBC Wood Gundy Securities, Inc. ("Wood Gundy, Inc."), a wholly-owned subsidiary of the Bank and Canadian broker-dealer with a principal place of business in Toronto, Ontario, Canada; and (ii) CIBC Oppenheimer Corp. ("OPCO"), a Delaware corporation with a principal place of business in New York, New York. OPCO is the successor in interest of Wood Gundy Corp. (Wood Gundy Corp.'s stock was merged into Oppenheimer & Co., Inc. to form OPCO) and is also a wholly-

owned subsidiary of the Bank. Both OPCO and the Bank are members of the NASD and NYSE. Wood Gundy, Inc. is not.

5. The FAA recognizes traditional contract defenses against the enforcement of arbitration agreements by providing that they "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

*Steinberg,* 891 F.2d 424, 431 (2d Cir.1989); *see also Schuetz v. CS First Boston Corp.,* No. 96 Civ. 5557(DC), 1997 WL 452392, at \*2 (S.D.N.Y. Aug.8, 1997). Here, plaintiff has failed to allege any threat that induced him to sign the Form U–4. He claims that he was "required by Defendants to work for … CIBC Gundy Securities Corp.," that he "agreed" to do so (Compl.¶ 8), and that "his signing the Form U–4 was a condition of his continued employment" with Wood Gundy Corp. (Pl.Mem.¶ 46). It is clear that plaintiff chose to accept a position with Wood Gundy Corp. which required him to register with the NASD and NYSE by signing a Form U–4. Moreover, Hart claims that he "was frequently approached by executive recruiters during the period 1994 through 1997" and that he "consistently turned down opportunities to interview for other jobs." (Compl.¶ 15). He cannot, therefore, argue that he had no alternative but to accept the position at Wood Gundy Corp. and sign the Form U–4. The arbitration agreement was not coerced or signed under duress. *See DeGaetano v. Smith Barney, Inc.,* No. 95 Civ. 1613(DLC), 1996 WL 44226, at \*3 (S.D.N.Y. Feb.5, 1996).

### B. *Unequal Bargaining Power*

■ Hart alleges that the arbitration agreement is the result of unequal bargaining power between himself and his employer. This argument has been considered and rejected by the Supreme Court. *See Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647 ("Mere inequality in bargaining power … is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context"). Standing alone, unequal bargaining power will not render the Form U–4 unenforceable. *See also Desiderio v. NASD,* 2 F.Supp.2d 516, 520 (S.D.N.Y.1998).

### C. *Knowing and Voluntary*

■ Plaintiff contends that, even absent duress or coercion, an agreement to

arbitrate employment discrimination claims under the ADEA or Title VII will be unenforceable if the consent to arbitrate was not "knowing and voluntary." The ADEA does require a waiver of "a right or claim" under the statute to be "knowing and voluntary," but this provision refers only to substantive rights—not procedural.[6] *See Seus v. John Nuveen & Co., Inc.,* 146 F.3d 175, 181 (3d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); *Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 660 (5th Cir.1995). The Supreme Court has consistently held that, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The Ninth Circuit is the only Circuit to apply the "knowing and voluntary" test to arbitration agreements, *see Prudential Ins. Co. of Am. v. Lai,* 42 F.3d 1299 (9th Cir.1994), and we now join with other circuit courts and district courts within the Second Circuit in rejecting this heightened standard. *See, e.g., Seus,* 146 F.3d at 183 n. 2; *Rice v. Brown Bros. Harriman & Co.,* No. 96 Civ. 6326(MBM), 1997 WL 129396, at \*4 (S.D.N.Y. Mar.21, 1997) (citing numerous Southern District cases).

Here, as in *Gilmer,* "there is no indication" that Hart, "an experienced businessman, was coerced or defrauded into agreeing to the arbitration clause in his registration application." 500 U.S. at 33, 111 S.Ct. 1647. He claims that he was not provided with copies of the relevant NASD Manuals or NYSE Rules and that he "assumed [the Form U–4] was just more paperwork." However, under general contract principles, absent a showing of fraud or other unlawful behavior,

**6.** 29 U.S.C. § 626(f)(1) provides in pertinent part: "An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary."

"plaintiff's subjective knowledge of the scope of the arbitration clause is irrelevant and he is presumed to have agreed to all the terms of the contract," including the NASD and NYSE arbitration provisions incorporated therein by reference.[7] *Rice,* 1997 WL 129396, at \*4. See also *Smith v. Lehman Bros., Inc.,* No. 95 Civ. 10326(JSM), 1996 WL 383232, at \*1 (S.D.N.Y. July 8, 1996) and cases cited therein.

The format of the Form U–4 only strengthens this presumption: (1) the arbitration provision is encompassed in a section beneath the heading **"THE APPLICANT MUST READ THE FOLLOWING CAREFULLY;"** (2) the first paragraph in this section expressly states, "I swear or affirm that I have read and understand the items and instructions on this form;" and (3) plaintiff has acknowledged the authenticity of his signature at the end of this section. The fact that Hart may not have been provided with or reviewed the NASD and NYSE manuals does not render the arbitration agreement unenforceable. *See Berger v. Cantor Fitzgerald Sec.,* 967 F.Supp. 91, 95–96 (S.D.N.Y.1997) (compelling arbitration although employee not provided with copy of NASD manual); *Cular v. Metro. Life Ins. Co.,* 961 F.Supp. 550, 556 (S.D.N.Y.1997) (same). The Form U–4 signed by Hart created a valid and enforceable arbitration agreement.

## II. *The Scope of the Agreement*

The arbitration provision found at paragraph 5 on page 4 of the Form U–4 provides:

7. Notwithstanding the irrelevance of Hart's subjective knowledge with respect to the arbitration rules, at Hart's level of employment within the defendant corporations, he was certainly aware of the prevalence of arbitration agreements in the securities industry and, as a savvy businessman, should have taken the time to review the materials referenced in the Form U–4 that he signed.

8. It is undisputed that Wood Gundy Corp. was, and OPCO is, a "member" of the NASD. Plaintiff, as an officer of Wood Gundy Corp.

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgement in any court of competent jurisdiction.

The organizations identified in Item 10 of the Form U–4 are the NASD and NYSE. Thus, plaintiff agreed to arbitrate disputes as required under the NASD Manual–Code of Arbitration Procedure ("NASD Code") and the NYSE Constitution and Rules ("NYSE Rules") as such may be amended from time to time. The relevant rules pertaining to arbitration are Rules 10101 and 10201(a) of the NASD Code and NYSE Rules 347 and 600(a).

### A. *The NASD Code*

■ At the time Hart signed his Form U–4 and on the date he commenced this action (June 9, 1998), Rule 10101 of the NASD Code provided for arbitration of "any dispute, claim, or controversy ... arising out of the employment or termination of employment of associated person(s) with any member." Similarly, Rule 10201(a) provided in pertinent part that:

[a]ny dispute, claim, or controversy ... between or among members and/or associated persons, and/or certain others ... arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code.[8]

(i.e., Managing Director) was an "associated person" within the meaning of Rule 10101. *See* NASD By–Laws, Art. I(ee); *Cular,* 961 F.Supp. at 556 (employees of member are "associated persons"). Finally, the Bank, CIBC, Inc. and Wood Gundy, Inc. (collectively, the "Affiliated Companies") are "certain others" within the meaning of Rule 10201(a). *See McMahan Sec. Co. v. Forum Capital Markets L.P.,* 35 F.3d 82, 87–88 (2d Cir.1994) (corporate defendants "sufficiently immersed in the underlying controversy" or "closely

On June 22, 1998, the SEC approved an amendment to this Rule providing that "claims alleging employment discrimination, including sexual harassment, in violation of a statute are not required to be arbitrated by NASD rules." SEC Release No. 34–40109, 63 Fed.Reg. 35299, 35301, 1998 WL 339422.[9] "This means that such claims may be filed in the appropriate court, if the employee chooses to do so and is not under an enforceable predispute obligation to arbitrate the dispute." 63 Fed. Reg. at 35301.

Plaintiff argues that he agreed to comply with the NASD Code "as amended from time to time" and therefore is not required to arbitrate his claim. However, the rule change did not become effective until January 1, 1999 and the NASD Regulation expressly states that the rule change applies only "to claims filed on or after the effective date of the rule change." 63 Fed.Reg. at 35301. In approving the amendment, the SEC noted that "this method is the one most commonly used with regard to changes to the Code and is the most efficient to administer." *Id.*

The relevant provisions of the SEC Release are clear and unambiguous. Further, they are in accord with numerous decisions in this Circuit holding that "it is the NASD Code in existence at the time an action is commenced that governs." *Hall v. MetLife Resources*, No. 94 Civ. 0358(JFK), 1995 WL 258061, at *4 (S.D.N.Y. May 3, 1995) (citing *Scher v. Equitable Life Assurance Soc.*, 866

F.Supp. 776 (S.D.N.Y.1994)); *see also Moore v. Interacciones Global, Inc.*, No. 94 Civ. 4789(RWS), 1995 WL 33650, at *5 (S.D.N.Y. Jan.27, 1995) (phrase "as amended from time to time" in Form U–4 means plaintiff "must comply with the NASD Code as it existed at the time [he] commenced the action"). Indeed, plaintiff admits that the effective date of the amendment is January 1, 1999 but argues that compelling arbitration of plaintiff's claims would "fly in the face of public policy." This Court cannot, however, disregard legal precedent and the clear intent of the SEC to apply the amendment only to claims filed in court on or after January 1, 1999. Plaintiff is bound by the NASD Code as it existed on June 9, 1998.

## B. *The NYSE Constitution and Rules*

■ At the time Hart signed his Form U–4 and on the date he commenced this action (June 9, 1998), NYSE Rule 347 required the arbitration of "any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative." Similarly, NYSE Rule 600(a) required arbitration of disputes:

> between a ... non-member and ... [an] associated person arising in connection with the business of such ... associated person in connection with his activities as an associated person.[10]

affiliated with numerous parties enmeshed in the underlying dispute" may compel arbitration as "certain others" under NASD Code); *see also Essex Corp. v. Independent Fin. Mktg. Group, Inc.*, 994 F.Supp. 532, 536 (S.D.N.Y. 1998); *Heller v. MC Fin. Servs. Ltd.*, No. 97 Civ. 5317(WK), 1998 WL 190288, at *3 (S.D.N.Y. Apr.21, 1998); *In re Salomon Inc.*, No. 91 Civ. 5500(RPP), 1994 WL 533595, at *5–6 (S.D.N.Y. Sept.30, 1994).

9. An employee may, however, agree to arbitrate after a dispute has arisen. *See* 63 Fed. Reg. at 35301.

10. Here, it is undisputed that Wood Gundy Corp. was, and OPCO is, a "member" of the

NYSE and that the Affiliated Companies are "non-members." Plaintiff was both a "registered representative" of the NYSE within the meaning of Rule 347 and, as an officer of Wood Gundy Corp., an "associated person" within the meaning of Rule 600. *See Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047, 1053–54 (2d Cir.1989); Securities and Exchange Act of 1934 § 3(a)(21), 15 U.S.C. § 78c(a)(21); *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C.Cir.1987). *See also In re Salomon Inc.*, 1994 WL 533595, at *5–6 (non-member parent of member can compel arbitration under NYSE Rules).

On December 29, 1998, the SEC amended NYSE Rules 347 and 600 "to exclude claims of employment discrimination, including sexual harassment, in violation of a statute from arbitration unless the parties have agreed to arbitrate the claim after it has arisen." *See* SEC Release No. 34–40858, 64 Fed.Reg. 1051, 1999 WL 3315.

 Unlike the NASD, the NYSE rule change is silent on the issue of retroactivity and the SEC Release did not provide an effective date other than the date of approval, here December 29, 1998. The SEC Release provides some guidance, however, by comparing the NASD and NYSE rule changes. In its response to comment letters, the SEC "noted that its proposal is substantially similar to the NASD's recent rule change, since both leave parties' substantive rights and remedies largely unchanged." 64 Fed.Reg. at 1053. The only differences discussed pertain to the NYSE's strict prohibition of pre-dispute arbitration agreements versus the NASD's approach of enforcing private pre-dispute agreements. *See id.* It would have been logical to discuss a difference in the retroactivity of the rule changes as well. Given the silence of the release on this point, and in light of the SEC's knowledge of the NASD amendments, we find that the NYSE amendments apply to all claims filed in court on or after December 29, 1998. Plaintiff is, therefore, bound by the NYSE Code as it existed on June 9, 1998.

### C. *Scope of the Arbitration Agreement*

 In accordance with the "liberal federal policy favoring arbitration agreements," the FAA requires courts to construe the NASD and NYSE arbitration provisions as broadly as possible and to resolve "any doubts concerning the scope of arbitrable issues ... in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Indeed, broadly worded arbitration provisions create a presumption of arbitrability such that a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (quotation and citation omitted).

Applying these principles, all of plaintiff's claims fall within the scope of the NASD and NYSE compulsory arbitration provisions as they existed when this action was commenced. This conclusion is overwhelmingly supported by case law and is seemingly unchallenged by plaintiff. *See, e.g., Gilmer*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (ADEA claim within scope of NYSE Rules); *Fleck*, 891 F.2d at 1053–54 (employment-related defamation and other tort claims within scope of NASD and NYSE arbitration rules); *Schuetz*, 1997 WL 452392, at *3 (Title VII claims within scope of NASD Code) (collecting cases); *Hall*, 1995 WL 258061, at *3 (same); *Chisolm v. Kidder, Peabody Asset Mgmt., Inc.*, 810 F.Supp. 479 (S.D.N.Y. 1992) (breach of contract, breach of implied contract and age discrimination claims within scope of NASD and NYSE rules).

### III. *Arbitrability of ADEA Claims*

 Hart must be compelled to arbitrate his age discrimination claim unless he can show "that Congress intended to preclude a waiver of a judicial forum for ADEA claims" as evidenced by "the text of the ADEA, its legislative history, or an 'inherent conflict' between arbitration and the ADEA's underlying purposes." *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647. Plaintiff's burden in this respect is a heavy one given the Supreme Court's dictate that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. 927).

As in *Gilmer*, plaintiff "concedes that nothing in the text of the ADEA or its legislative history explicitly precludes arbitration." 500 U.S. at 26, 111 S.Ct. 1647.

Rather, plaintiff argues that arbitration is inconsistent with the ADEA because of the inadequacy of arbitration procedures. Numerous arguments with respect to arbitration procedures were rejected by the *Gilmer* Court and the ADEA was held not to preclude compulsory arbitration. Thus, unless plaintiff can exceed the proof of such "inherent conflict" offered by the plaintiff in *Gilmer*, the same result must follow here.[11]

## IV. *Arbitrability of Title VII Claims*

■ The Supreme Court has not yet ruled on whether its reasoning in *Gilmer* should be extended to the arbitration of disputes arising under Title VII. However, the majority of circuit courts have held that Title VII, as amended, does not preclude arbitration. *See, e.g., Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 170 F.3d 1, 6–11 (1st Cir.1999); *Seus*, 146 F.3d at 179, 182–83 (3d Cir.1998); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir.1997); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 837 (8th Cir.1997); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1467–68 (D.C.Cir. 1997); *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875, 882 (4th Cir. 1996); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir.1994); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 308, 312 (6th Cir.1991); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir.1991). Only the Ninth Circuit has arrived at the opposite conclusion. *See Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 445, 142 L.Ed.2d 399 and —— U.S. ——, 119 S.Ct. 465, 142 L.Ed.2d 418 (1998) (Nos. 98–237 and 98–409). The Court of Appeals for the Second Circuit has not yet considered the issue, but the weight of authority within the circuit supports the conclusion that mandatory arbitration of Title VII claims is not precluded by the statute. *See, e.g., Desiderio*, 2 F.Supp.2d at 520; *Rand v. J.C. Bradford & Co.*, No. 98 Civ. 4906(DLC), 1998 WL 872421, at *4 (S.D.N.Y. Dec. 15, 1998) (citing cases); *Bishop v. Smith Barney, Inc.*, No. 97 Civ. 4807(RWS), 1998 WL 50210, at *7 (S.D.N.Y. Feb.6, 1998) (citing cases).

Relying primarily on *Duffield* and the district court's decision in *Rosenberg*, plaintiff argues that the 1991 Civil Rights Act ("1991 CRA"), amending Title VII, demonstrates a congressional intent to prohibit enforcement of pre-dispute agreements to arbitrate Title VII claims.[12] Section 118 of the 1991 CRA provides:

> [w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

Civil Rights Act of 1991, Pub.L. No. 102–166, § 118, 105 Stat. 1071, 1081 (1991). In *Rosenberg*, the district court found that the language and legislative history of this section "unambiguously reject mandatory arbitration agreements." *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith*, 995 F.Supp. 190, 201 (D.Mass.1998), *aff'd on other grounds*, 170 F.3d 1 (1st Cir. 1999). In particular, the court held that the phrase "where appropriate and to the extent authorized by law" codified the Su-

---

11. Because Hart's arguments concerning the inadequacies of arbitration are equally applicable to Title VII claims, they will be addressed below in connection with both statutory claims.

12. In support of this argument, plaintiff also cites *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y.1998). The *Martens* Court, however, did not hold Congress intended to prohibit prospective agreements to arbitrate Title VII claims. Rather "in the inapposite context of determining whether it possessed subject matter jurisdiction to evaluate a settlement," the court held that "plaintiffs would not be collaterally estopped" from making such an argument. *Rand,* 1998 WL 872421, at *4.

preme Court decision in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) which allegedly created an absolute prohibition of prospective waivers of the right to a judicial forum for employment discrimination claims. The Ninth Circuit reached a similar conclusion in *Duffield*, 144 F.3d 1182.

First, it should be noted that the First Circuit affirmed *Rosenberg* on different grounds and expressly rejected the district court's finding with respect to the arbitrability of Title VII claims. *See Rosenberg*, 170 F.3d at 4–11 ("We find no conflict between the language or purposes of Title VII, as amended, and arbitration"). Second, the decision of the Ninth Circuit Court of Appeals in *Duffield* is not binding on this Court, and we decline to adopt its reasoning, as the courts of appeals for most other circuits have done. It is more likely that the language "where appropriate and to the extent authorized by law" is a reference to the FAA and the current state of the law of arbitrability with regard to federal statutory employment discrimination claims, rather than a snapshot of the law as it existed when the 1991 CRA was drafted (i.e., a reference to a particular Supreme Court case).[13] *See Seus*, 146 F.3d at 183 (noting its disbelief that "this straightforward declaration of the full Congress [§ 118] can be interpreted to mean that the FAA is impliedly repealed"); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 365 (7th Cir.1999). Indeed, the legislative history referenced by plaintiff shows that Congress was aware of the *Gilmer* decision, and the growing concern over compulsory pre-dispute arbitration agreements, yet chose not to alter the wording of § 118 to preclude arbitration in such instances. We therefore hold that

neither the text of Title VII, as amended, nor its legislative history evince a congressional intent to preclude compulsory arbitration of Title VII claims.

## V. Challenges to the Adequacy of the Arbitral Forums

Hart asserts that "[t]he Second Circuit has recently acknowledged the inadequacies existent in the arbitral forum in an ADEA case where arbitration was compelled pursuant to a Form U–4 Agreement." (Plaintiff's Mem. at ¶ 80 citing *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1286, —— L.Ed.2d —— (1999)). Plaintiff's reliance on *Halligan*, however, is misplaced. The court expressly stated that it did "not address Mrs. Halligan's generalized challenge to arbitrations conducted under the aegis of the NASD." *Halligan*, 148 F.3d at 203. Rather, the arbitral award at issue was vacated upon the Second Circuit's conclusion that the particular arbitrators involved had "manifestly disregarded the law or the evidence or both." *Id.* at 204. As defendants correctly point out, the *Halligan* decision, if anything, confirms that an individual's statutory rights are not waived by submitting claims to arbitration because a district court has the authority to vacate any award issued in manifest error.

In further reliance on the district court decision in *Rosenberg*, plaintiff also argues that the NYSE arbitration procedures are inadequate due to "institutional bias" or "structural imbalance." In affirming the district court's decision on other grounds, however, the Court of Appeals for the First Circuit stated that, "[i]n reaching this conclusion [regarding "structural

---

**13.** Even if Congress did intend to reference *Gardner–Denver*, the decision of this Court would not be different. *Gardner–Denver* addressed the prospective waiver of judicial forum rights by union representatives in connection with the negotiation of a collective-bargaining agreement. *See Alexander v. Gardner–Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The case at hand deals

with an individually executed Form U–4, not a collective-bargaining agreement. This distinction was recognized by the Supreme Court in *Gilmer*, 500 U.S. at 35, 111 S.Ct. 1647, and again in *Wright v. Universal Maritime Serv. Corp.*, —— U.S. ——, ——, ——, 119 S.Ct. 391, 395, 396, 142 L.Ed.2d 361 (1998). The *Wright* Court also made clear that *Gilmer* is still good law.

bias"], the district court committed two types of errors"—one of law and one of fact. *Rosenberg*, 170 F.3d at 13–17. The legal error was the refusal to compel arbitration based upon alleged structural infirmities despite finding "no actual bias in the NYSE's arbitration system." *Id.*, at 13. The Court then cited numerous factual errors involving the district court's description of the NYSE's arbitration procedures. For instance, the district court had "mischaracterized both Merrill Lynch's role in the NYSE and NYSE arbitration procedures." *Id.* at 15. Indeed, rather than constituting a majority of the NYSE board, "representatives of the securities industry actually occupy a minority of seats on the NYSE's board." *Id.* Further, the circuit court found that "the NYSE is subject to regulation by the SEC" which "possesses 'expansive power to ensure the adequacy of the arbitration procedures'" and that "[r]ather than being controlled by the securities industry, the NYSE plays a significant role in monitoring and disciplining exchange members for noncompliance with its rules." *Id.* Moreover, the district court was found to have erred in its description of specific arbitration procedures, "including its description of the pool of potential arbitrators, and in equating the NYSE's appointment of arbitrators with appointment of arbitrators by a trade association." *Id.* The *Rosenberg* court also noted that, contrary to the plaintiff's assertions, and as affirmed in *Gilmer:* (1) the "the NYSE arbitration rules ... provide protections against biased panels," *Rosenberg*, 170 F.3d at 14; (2) "NYSE rules do not limit available relief;" and (3) "NYSE arbitrators possess discretion to award costs and fees when they decide a dispute." *Id.*, at 16. Finally, plaintiff's argument that the NYSE policy of not issuing written opinions renders the arbitral forum inadequate was expressly rejected in *Gilmer*. 500 U.S. at 31–32, 111 S.Ct. 1647. Thus, plaintiff has failed to prove that he cannot effectively vindicate his statutory rights in either the NASD or NYSE arbitral forum. Accordingly, this Court must compel arbitration of the claims set forth in plaintiff's complaint and stay judicial proceedings in this action pending such arbitration.

## VI. *Motion to Dismiss Count V*

Defendants have moved this Court to dismiss Count V of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, and to compel the parties to arbitrate all claims that survive the motion to dismiss. The FAA, however, "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). As discussed above, the relevant NASD and NYSE arbitration provisions require Hart to arbitrate all disputes "arising out of [his] employment or termination of employment." Count V of the complaint alleges that "Mr. Michael Capatides and Defendants' senior management conspired to deprive Lewis Hart" of his rights to a judicial forum for his Title VII and ADEA claims by forcing him to transfer to Wood Gundy Corp. The issues raised by this allegation clearly fall within the scope of the arbitration agreement entered into by Hart. The Court, therefore, has no discretion under the FAA and "must direct the parties to arbitration on these issues." The arbitration panel has authority to determine whether or not plaintiff is entitled to relief based upon the allegation contained in Count V. Accordingly, all judicial proceedings are hereby stayed and the Court reserves decision on defendants' motion to dismiss pending arbitration.

## CONCLUSION

For the reasons discussed above, defendants' motion to compel arbitration and for a stay of proceedings pending arbitration is granted. The parties are directed to proceed with arbitration forthwith, and to advise the Court of the status of arbitra-

tion by September 17, 1999 unless a decision is rendered by the arbitrators prior to that date. The Court reserves decision on defendants' motion to dismiss Count V pending arbitration.

SO ORDERED.