Steven MARCUS, Plaintiff,

v.

Samuel MASUCCI and Bear, Stearns & Co., Inc., Defendants.

No. 00 Civ. 3519(RWS).

United States District Court, S.D. New York.

Oct. 31, 2000.

Kelly Murray & Balber, New York City, by Scott S. Balber, Michael T. Murray, of counsel, for plaintiff.

Smith Campbell, New York City, by David S. Smith, of counsel, for defendant Samuel Masucci.

Andrews & Kurth, New York City, by Arthur D. Felsenfeld, Melissa Baal, of counsel, for defendant Bear, Stearns & Co., Inc.

## OPINION

SWEET, District Judge.

Defendants Samuel Masucci ("Masucci") and Bear Stearns & Co., Inc. ("Bear Stearns") (collectively, the "Defendants") have moved to compel plaintiff Steven Marcus ("Marcus") to arbitrate this dispute and dismissing or, alternatively, staying this action pending arbitration pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and the By-laws of the National Association of Securities Dealers Inc. ("NASD"). For the reasons set forth below, the motion will be granted, arbitration is compelled, and this action is dismissed with leave granted to reopen if necessary upon completion of the arbitration.

### The Parties

Marcus is employed by Chase Securities, Inc. ("Chase Securities").

Bear Stearns is a registered broker-dealer of securities.

Masucci is employed by Bear Stearns as a Managing Director.

### Prior Proceedings

This action was commenced on May 8, 2000 by Marcus by the filing of a complaint alleging fifteen causes of action against the Defendants arising out of their use of an investment product called Shared Application Mortgage Securities ("SAMS"), including misappropriation of trade secrets, unfair competition, and unjust enrichment. Marcus seeks damages, the imposition of a construction trust and an accounting.

The instant motion was filed on July 10, 2000, and submissions were received through August 12, 2000, at which time the matter was deemed fully submitted.

### Facts

For the purposes of a motion to dismiss, the factual allegations of the complaint are taken as true, though it is appropriate when considering jurisdictional issues to consider matters outside the parameters of the pleadings. *See Cargill Intern. S.A. v. M/T PAVEL DYBENKO,* 991 F.2d 1012, 1019 (2d Cir.1993); *Kamen v. A.T. & T. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986); *Exchange Nat. Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976), modified on other grounds by *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930 (2d Cir.1984).

According to the complaint, Marcus and Masucci were previously employed at SBC Warburg Pincus Dillon Read ("Warbury Pincus") where they worked on the development of SAMS. Warburg Pincus abandoned the project in October 1998, terminated Marcus and Masucci, and granted them a release concerning the SAMS materials. According to Marcus, he and Masucci then formed a joint venture to develop and promote SAMS.

The complaint further alleges that from November 1998 until March 1999, Marcus and Masucci sought to interest investment firms in the project. Bear Stearns was one of these firms. Bear Stearns negotiated with both Masucci and Marcus. In April 1999, Bear Stearns hired Masucci as a managing director. Marcus was not hired and remained unemployed until April 10, 2000, when he was hired by Chase Securities.

The complaint further alleges that Masucci, in collaboration with Bear Stearns, has *inter alia* misappropriated SAMS and is currently exploiting this product, that Bear Stearns is on the verge of bringing

SAMS to the marketplace, that Masucci is currently assisting Bear Stearns in the development and marketing of SAMS, that the Defendants are using misappropriated trade secrets to develops SAMS products in violation of fiduciary and contractual duties to Marcus, and that the Defendants have engaged in unfair competition.

Chase Securities is a member of the NASD and Marcus is a NASD-registered employee of Chase Securities. The Defendants allege without contradiction by Marcus that in order to become a registered employee of Chase Securities, Marcus would have been required to sign a "Form U–4 Uniform Application For Securities Industry Registration or Transfer" ("Form U–4"). Form U–4 provides that the registered employee agrees:

> to arbitrate any dispute, claim or controversy that may arise between [the employee and his] firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in item 10.

Item 10 of Form U–4 lists the NASD among the covered organizations.

### Discussion

#### I. *The Standard Governing A Motion To Compel Arbitration*

A valid arbitration agreement is governed by the FAA, 9 U.S.C. § 1 *et seq.*, which establishes a "federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This policy requires that courts "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *see also Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir.1988); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The question of arbitrability is two-fold: (1) whether there is an enforceable agreement to arbitrate and, if so, (2) whether the scope of that agreement encompasses the claims. *See David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 249 (2d Cir.1991) (citations omitted).

■ In making such determinations, a court is to employ ordinary contract principles, *see Conway v. Icahn & Co.*, 787 F.Supp. 340, 344 (S.D.N.Y.1990); *Kyung Sup Ahn v. Rooney, Pace Inc.*, 624 F.Supp. 368, 369 (S.D.N.Y.1985), and "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability," *Mitsubishi Motors*, 473 U.S. at 626, 105 S.Ct. 3346. There is a strong federal policy to construe arbitration clauses broadly. *See Threlkeld*, 923 F.2d at 250–51; *S.A. Mineracao da Trindade–Samitri v. Utah International, Inc.*, 745 F.2d 190, 194 (2d Cir.1984); *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citations omitted).

#### II. *The Motion To Compel Arbitration Will Be Granted*

##### A. *There is an Enforceable Agreement to Arbitrate*

■ The NASD By-laws provide the basis for an agreement binding Marcus to arbitrate before an NASD tribunal. Article VII, Section 1(a)(iv) of the By-laws states that "the Board shall have the authority to ... prescribe rules for the required or voluntary arbitration of controversies between members and between members and customers or others as it shall deem necessary or appropriate." Rule 10101 of the NASD Code of Arbitration Procedure ("NASD Code"), adopted pursuant to the foregoing By-laws provision, states:

> Matters Eligible for Submission. This Code of Arbitration Procedure is prescribed and adopted pursuant to Article

VII, Section 1(a)(iv) of the By–Laws of the Association for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company:

(a) between or among members;

(b) between or among members and associated persons;

(c) between or among members or associated persons and public customers, or others; and

(d) between or among members, registered clearing agencies with which the Association has entered in an agreement. . . .

In addition, NASD Code Rule 10201(a) covering "Required Submissions" provides in relevant part that:

a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination or employment of such associated person(s) with such members, shall be arbitrated under this Code at the instance of:

(1) a member against another members;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) a person associated with a member against a person associated with a member. . . .

The NASD By–Laws define a "member" as "any broker or dealer admitted to membership in the NASD." NASD By–Laws, Art I(q). The By–Laws define a "person associated with a member" or an "associated person of a member" as:

(1) a natural person registered under the Rules of the Association; or (2) a sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member whether or not any such person is registered or exempt from registration with the NASD under these By–Laws or the Rules of the Association.

NASD By–Laws, Art. I(ee).

Bear Stearns is a member of the NASD. Masucci, as a Managing Director and securities professional employed by Bear Stearns, is an "associated person." *Cular v. Metropolitan Life Ins. Co.*, 961 F.Supp. 550, 556 (S.D.N.Y.1997) (employees of NASD-member firms are "associated persons" under NASD Rules); *American Express Fin. Advisors, Inc. v. Zito*, 45 F.Supp.2d 230, 233 (E.D.N.Y.1999) (former employee of NASD-member firm was associated person under NASD rules). Masucci also signed a Form U–4 in connection with his employment at Bear Stearns.

Chase Securities is also a member of the NASD. Thus, like Masucci, Marcus, as an employee of Chase Securities, is an "associated person." In addition, in order to become a registered employee of Chase, Marcus was required to sign a Form U–4. A signed Form U–4 constitutes an express arbitration agreement enforceable under the FAA.[1] *See Hart v. Canadian Imperial Bank of Commerce*, 43 F.Supp.2d 395, 399 (S.D.N.Y.1999) (*citing Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 22–25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).

---

**1.** The Defendants' allegation that Marcus signed a Form U–4 is unrebutted. Therefore, it is deemed admitted for purposes of the instant motion.

There is therefore an agreement to arbitrate.

### B. *The Scope Of The Agreement to Arbitrate Includes The Claims At Issue*

■ Marcus contends that the agreement to arbitrate cannot be applied retroactively to claims which arose before he became bound as an employee of Chase Securities to arbitrate disputes in accordance with the NASD By–Laws. Marcus became employed by Chase Securities on April 10, 2000, and therefore would have executed a Form U–4 on or about that date. According to Marcus, the instant dispute arose during the period November 1998 through March 1999, during which time he was unemployed.

First, Marcus's characterization of when the events underlying this dispute occurred is inconsistent with the complaint. The complaint is not limited to the period prior to March 1999, which is when Bear Stearns hired Masucci. Instead, the complaint alleges ongoing misconduct by the Defendants, including *inter alia* that they are currently exploiting SAMS in violation of Marcus's rights, that Bear Stearns is on the verge of bringing SAMS to the marketplace, that Masucci is currently assisting Bear Stearns in the development and marketing of SAMS, that the Defendants are using misappropriated trade secrets to develops SAMS products in violation of fiduciary and contractual duties to Marcus, and that the Defendants have engaged in unfair competition. Thus, Marcus's contention that his claims are limited to events occurring before he became bound to arbitrate disputes under the NASD By–Laws is misplaced.

Second, even if retroactive application of the agreement to arbitrate were involved, the Second Circuit has expressly rejected the argument that securities industry arbitration agreements cannot be applied retroactively. *See Coenen v. R.W. Pressprich & Co., Inc.,* 453 F.2d 1209 (2d Cir.1972). In *Coenen,* the court considered the applicability of the arbitration clause contained in the New York Stock Exchange ("NYSE") Constitution to a claim which arose before the plaintiff joined the NYSE. *See id.* at 1211. The court held that the claim was arbitrable because when the plaintiff joined the exchange he agreed to arbitrate " '[a]ny controversy between ... members ...,' with full knowledge that he had a claim against [defendant] and that [defendant] was a Stock Exchange member." *Id.* at 1212. The Second Circuit rejected the plaintiff's argument that the NYSE arbitration clause applied only to "future" disputes that arise after both parties have become NYSE members, stating that such argument "need not detain us long," stating:

> As an implementation of the statutory policy of self-regulation, we think the clause is clear on its face. It reads "any controversy" between members. And that is precisely what it must mean if controversies between members are to be kept out of the courts. Had those who drafted the clause intended otherwise they doubtless would have used language plainly stating that "any future controversy" or any controversy between members "arising after both parties to the dispute have become" members ... this purpose would be frustrated and in effect nullified if we were to construe such clause as applicable only to "future" disputes.

*Id.*

Marcus contends that under ordinary contract law principles governing the interpretation of contracts an agreement to arbitrate cannot be applied retroactively unless retroactive application is expressly set forth in the agreement. However, the cases cited by Marcus for this proposition are inapposite. One case, *Viacom Int'l, Inc. v. Tandem Prods., Inc.,* 368 F.Supp. 1264, 1270 (S.D.N.Y.1974), does not concern an arbitration clause. Rather, *Viacom* deals with the enforceability of an assignment clause in a contract with a retroactive effective date and dealing with

the distribution of a television show. *See id.*

Another case cited by Marcus, *Mehler v. The Terminix Int'l Co. L.P.*, 205 F.3d 44, 48 (2d Cir.2000), held that a broadly-worded arbitration clause encompassed acts which took place prior to the execution of the contract. In *Mehler* the arbitration clause provided for the arbitration of " 'any controversy or claim between [the parties] arising out of or relating to' the Agreement." *Id.* at 49 (citations omitted). The court held that where· such a broad arbitration agreement exists, "the court must compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Id.* The fact that the events at issue occurred before the execution of the contract was not determinative. *Id.*

In *Mehler*, the Second Circuit relied upon its earlier decision in *Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16, 21 (2d Cir.1995) where it held that where ·two separate contracts governed a dispute, and only the first contained an arbitration clause, certain claims were arbitrable even if they arose after the second contract was entered into. *See Mehler*, 205 F.3d at 50. Instead, the claims were subject to arbitration because they "[arose] out of or [were] related to 'the contract that did contain the arbitration clause.' " *Id.* The Court reached its decision by noting that "it is clear that we have not limited arbitration claims to those that constitute a breach of the terms of the contract at issue." *Id.* (citations omitted).

Form U–4 contains a broad arbitration clause covering disputes not only with a registered employee's current employer but also with any NASD-member firm or any other "associated person." The only further limitation on the scope of the matters required to be arbitrated is that they "aris[e] in connection with the business of [the NASD] member, or in connection with the activities of [the] associated person, or ... out of the employment or termination of employment of [the] associated person(s) with [the] member." NASD Rule 10201(a). The Second Circuit has recognized that a broad arbitration clause such as this one justifies a presumption of arbitrability. *See Oldroyd v. Elmira Savings Bank*, 134 F.3d 72, 76 (2d Cir.1998); *Collins & Aikman*, 58 F.3d at 19–20. Thus, under the reasoning of *Mehler*, 205 F.3d 44, and the presumption of arbitrability, any claims of Marcus existing prior to April 2000 are subsumed in his ongoing claims arising out of the same alleged misappropriation.

Finally, Marcus has cited to cases concerning arbitration clauses in collective bargaining agreements. *See, e.g. Procter & Gamble Independent Union of Port Ivory, N.Y. v. Procter & Gamble Manufacturing Co.*, 312 F.2d 181 (2d Cir.1962). In that situation, the requirement to arbitrate is typically restricted to disputes arising under the collective bargaining agreement itself, and therefore is inapplicable to events taking place after the collective bargaining agreement expires. *See Procter & Gamble*, 312 F.2d at 185 and fn. 4 (2d Cir.1962) (arbitration clause limited to grievances concerning interpretation or application of collective bargaining agreement was inapplicable to activities occurring after expiration of the agreement). The reasoning of those cases does not apply here. In sum, the agreement to arbitrate entered into by Marcus covers the instant case.

### Conclusion

Therefore, for the reasons set forth above, the Defendants' motion to compel arbitration is granted and this action is dismissed with leave granted to reopen without payment of filing fees necessary to enforce or vacate the arbitration.

It is *so* ordered.