Jeffrey **SMITH**, Plaintiff,

v.

**PROFESSIONAL SECURITY BUREAU**, Defendant.

**No. 02 CIV. 0361 VM.**

United States District Court, S.D. New York.

Sept. 30, 2002.

Jeffrey Smith, Brooklyn, NY.

### ORDER

MARRERO, District Judge.

Plaintiff Jeffery Smith ("Smith") filed this action, then *pro se*, with the *pro se* office on November 15, 2001. The matter was not assigned a docket number until January 15, 2002. By Order, dated April 22, 2002, the Court reminded Smith of his obligation to serve Defendant Professional Security Bureau ("PSB"). Service on PSB was effected on April 23, 2002.

On May 24, 2002, PSB filed a motion to dismiss and served it on Smith. PSB served another copy on Smith's counsel, who made an appearance at the initial conference before the Court on June 10, 2002. Smith did not file any opposition papers or otherwise appear in the case until after the Court reminded him of the long-past due date by Order, dated September 17, 2002. At that time, Smith, by counsel, requested a one week extension to oppose the motion, which the Court granted. (*See* Order, dated September 20, 2002.)

A district court may grant a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) only if it appears beyond doubt that the non-moving party could prove no set of facts that would entitle it to relief. *See Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994). In reviewing the pleadings, the court must accept the non-moving party's allegations as true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Furthermore, a court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading. *See I. Meyer Pincus & Associates, Inc. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991); *2 Broadway L.L.C. v. Credit Suisse First Boston,* No. 00 Civ. 5773, 2001 WL 410074, *5 (S.D.N.Y. Apr.20, 2001).

Here, PSB introduced the Employment Agreement it entered with Smith. Smith did not attach that document to his complaint, nor did he expressly refer to it in his complaint. However, it is integral to the complaint because it forms the basis of the relationship between the parties. Furthermore, Smith relied upon its terms in his opposition to the motion. Accordingly, the Court considers the Employment Agreement in its analysis.

The Federal Arbitration Act manifests a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (internal quotations and citations omitted). As such, an agreement to arbitrate should be enforced, provided that no congressional "intention to preclude a waiver of judicial remedies" exists. *Id.* at 26, 111 S.Ct. 1647 (internal quotations and citations omitted); *see also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (federal policy requires that courts "rigorously enforce agreements to arbitrate."). The Second Circuit has held that Title VII of the Civil Rights Act of 1964, as codified at 42 U.S.C. § 2000e to 2000e–17, ("Title VII") does not preclude mandatory arbitration clauses in individually executed contracts. *See Desiderio v. National Ass'n of Securities Dealers, Inc.,* 191 F.3d 198, 203–06 (2d Cir.1999). Smith does not, and indeed could not, argue that arbitration is precluded in this case.

In determining whether a dispute falls within the scope of a valid arbitration clause, a strong federal policy recommends

construction of arbitration clauses broadly. *See Marcus v. Masucci*, 118 F.Supp.2d 453, 455 (S.D.N.Y.2000) (citing *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *S.A. Mineracao da Trindade–Samitri v. Utah International, Inc.*, 745 F.2d 190, 194 (2d Cir.1984); *Threlkeld v. Metallgesellschaft Limited*, 923 F.2d 245, 250–51 (2d Cir. 1991)).

The Complaint alleges that Smith was discriminated and retaliated against on the basis of race and religion in violation of Title VII while employed at PSB during 1999 and 2000. PSB's motion to dismiss is based on the employment agreement between PSB and Smith, providing that:

> In consideration of this Agreement, in the event that Employee seeks relief in any agency or court of competent jurisdiction for any dispute covered by this Agreement, or his prior employment with the Company, or alleges any other claim of violation of law, including claims of discrimination or violation of public policy, the Company may, at any time within 90 days of the service of Employee's complaint upon the Company, at its sole option, require all or part of the dispute to be arbitrated by one arbitrator in accordance with the rules of the American Arbitration Association.

(At Will Employment Agreement and General Release, dated January 29, 1999 ("Employment Agreement"), at ¶ 16, attached as Ex. B to the Declaration of Mary T. Hart in Support of Defendant's Motion to Dismiss.) Thus, by filing a Rule 12(b)(6) motion to dismiss, PSR seeks to effectuate the arbitration provision of the Employment Agreement.

The broad language of the arbitration provision encompasses Smith's Title VII claims because they arise out of the employment relationship established under the Employment Agreement. Further, because Title VII claims may be subject to mandatory arbitration provisions, the Employment Agreement arbitration provision is valid.

The record in this matter reflects that PSB filed a motion to dismiss, seeking that the matter be sent to arbitration, well within 90 days of being served with the complaint. Accordingly, PSB exercised its right to mandatory arbitration, which the Court should respect.

█ Smith opposes the motion on three grounds. First, Smith contends that PSR's 90–day election period began when Smith served PSB with the complaint he filed with the EEOC, and only then. But, the Employment Agreement does not state the PSB has only one election period. Rather, the contractual language is that PSB has 90 days from service of a complaint filed in "any agency or court of competent jurisdiction for any dispute covered by this Agreement." (*Id.*) The Employment Agreement provides no support for the proposition that because PSB chose not to elect arbitration of the EEOC complaint, PSB prejudiced its right should Smith file subsequent complaints with other agencies or courts. The Court will not read the requested limitation into the Employment Agreement. Here, PSB had two opportunities to elect arbitration: first when Smith filed with the EEOC; and second when Smith filed with this Court. Accordingly, the Court rejects Smith's first argument.

Second, Smith argues that PSB's motion was filed after the 90–day election period had elapsed. Smith's second argument is inconsistent with the Employment Agreement's express terms providing that the election period begins when PSB is served, and which Smith quoted in the previous paragraph of his letter. (*See* Letter to the Court from Warren Randolph Kraft, dated September 27, 2002 (the "Kraft Letter"), at 1 ("*within 90 days upon the service of*

*Employee's Complaint upon the company* ...") (emphasis in original).) Here, PSB filed its motion approximately 30 days after it was served. Thus, PSB exercised its right to send the matter to arbitration in a timely manner, and Smith's second argument fails.

Third, Smith argues that the arbitration provision "was included as part of a general release relating to previous claims between the parties in resolution of their previous dispute." (Kraft Letter, at 2.) This argument also misconstrues the Employment Agreement. Although the Employment Agreement appears to serve two purposes—an at will employment agreement and a general release—there is no indication that the arbitration provision concerns only past claims. Rather, by its terms, the arbitration provision covers allegations of "any other claim of violation of law, including claims of discrimination or violation of public policy." (Employment Agreement, at ¶ 16.) As a matter of common sense, also, it would be illogical for a party to make a general release of past claims and then agree to arbitrate the released claims. Accordingly, Smith's third argument fails. The Court must give effect to the arbitration provision agreed to by the parties by dismissing this case.

### ORDER

For the foregoing reasons, it is hereby

ORDERED that defendant Profession Security Bureau's motion to dismiss the complaint is granted; and it is further

ORDERED that plaintiff Jeffery Smith proceed to arbitration if he wishes to pursue the claims set forth in the complaint.

The Clerk of Court is directed to close this case.

**SO ORDERED.**