**James R. O'DONNELL, Jr., Plaintiff,**

v.

**FIRST INVESTORS CORPORATION and Howard Froman, Defendants.**

No. 94 Civ. 2839 (PKL).

United States District Court, S.D. New York.

Jan. 18, 1995.

Loselle Greenawalt Kaplan Blair & Adler (William S. Greenawalt, of counsel), New York City, for plaintiff.

Patterson, Belknap, Webb & Tyler (William F. Cavanaugh, Jr., Erik Haas, of counsel), New York City, for defendants.

### OPINION AND ORDER

LEISURE, District Judge.

This is a motion brought by defendants First Investors Corporation ("FIC") and Howard Froman ("Froman") (together the "defendants") seeking to compel arbitration, to stay the present action and to impose the cost of bringing this motion on plaintiff, James R. O'Donnell, Jr. ("O'Donnell"). Defendants argue that the underlying action brought by O'Donnell, concerning his employment contract, is subject to mandatory arbitration under National Association of Securities Dealers, Inc. ("NASD") rules. Plaintiff maintains that actions involving employment contracts prior to an October 1993 amendment to the NASD, Code of Arbitration Procedure ("Code") do not fall within the scope of mandatory arbitration.

### BACKGROUND

FIC is a brokerage firm which is a member of NASD and which has its principal place of business in New York City. Froman is a senior vice president of FIC and a resident of Scarsdale New York. O'Donnell is a resident of New Haven, Connecticut. FIC hired O'Donnell in October 1989 as a "registered representative." At that time, FIC and O'Donnell executed an employment contract called the registered representative agreement ("RRA"). As a condition of employment, O'Donnell had to qualify as a registered representative under NASD rules. In order to do so, O'Donnell signed a Uniform Application for Securities Industry Registration or Transfer Form U–4 ("U–4"), which provided that O'Donnell would submit to arbitration under the rules of NASD.

On September 15, 1992, O'Donnell agreed to take a new position with FIC. He agreed to give up his position as a registered representative to become the manager of FIC's

San Jose office. In connection with this appointment, O'Donnell forwarded to FIC a Memorandum of Understanding ("MOU"), which outlined what he understood to be the terms of his promotion and which purported to supersede the earlier RRA with FIC. O'Donnell conducted his negotiations regarding the new job with Froman. A few months later, on March 29, 1993, FIC fired O'Donnell. The underlying action, for (i) fraudulent misrepresentation, (ii) interference with contract, (iii) breach of employment and (iv) breach of good faith, resulted.

In October 1993, NASD amended its Code to include explicitly employment contracts within the scope of mandatory arbitration. Defendants argue that NASD has always maintained that employment contracts are subject to arbitration, and the amendment was only a clarification. Reply Memorandum on Defendants' Motion to Compel Arbitration ("Defendant reply") at 14. O'Donnell, on the other hand, takes the position that the pre-amendment Code did not include employment contracts. Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration and for a Stay ("Plaintiff opp.") at 8. Alternatively, O'Donnell argues that the MOU, not the RRA, should govern this case. Since O'Donnell executed the U–4 in connection with the RRA, he argues that the U–4, and with it the NASD Code, does not apply to the underlying action.

## DISCUSSION

Defendants contend that the dispute surrounding O'Donnell's discharge is subject to mandatory arbitration because the U–4, which O'Donnell signed, provided that he "agreed to arbitrate any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules, constitutions, or by-laws of [NASD]." Given the U–4's and the Federal Arbitration Act's ("FAA") "liberal federal policy favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765

(1983)), defendants move for an order compelling arbitration and a stay of the pending action under FAA §§ 3 and 4. O'Donnell responds with a two-fold reply. First, he states that the MOU, not the U–4, governs the pending action.[1] Second, he contends that even if the U–4 were applicable, the rules of NASD, at the time O'Donnell was fired, did not include employment disputes within its scope.

■ An arbitration agreement is to receive the same treatment as any contract, and the FAA was designed "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer, supra,* 500 U.S. at 24, 111 S.Ct. at 1651. This impetus towards liberally enforcing arbitration agreements "reflect[s] Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." *Deloitte Noraudit A/S v. Deloitte Haskins & Sells,* 9 F.3d 1060, 1063 (2d Cir.1993) (citations omitted).

FAA § 3 mandates that courts "upon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration under [ ] an agreement, *shall* ... stay the trial of the action...." 9 U.S.C. § 3 (1988) (emphasis added). " ' "The Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." ' " *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 830 (2d Cir.1988) (emphasis in original) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985))).

■ The Court, though, must first determine if the scope of the agreement includes the dispute at hand, and courts will not force parties into arbitration when such was clearly not the intent of the parties. *See*

---

1. Both parties agree that the MOU does not have an arbitration clause in it.

*Chevron U.S.A. Inc. v. Consolidated Edison Co.,* 872 F.2d 534, 537 (2d Cir.1989). The parties' intentions are important "but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). Whenever an arbitration agreement exists, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24–25, 103 S.Ct. at 941, and "[d]oubts should be resolved in favor of coverage," *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (quotation omitted).

### 1. U–4 Governs the Pending Action

■ O'Donnell argues that the MOU specifically superseded the RRA and all its riders. Since the U–4 was signed as a condition to the RRA, O'Donnell argues, the U–4 ceased to be effective when O'Donnell was promoted. The U–4, however, is not a contract with defendants but rather an application to qualify with various security exchanges. The U–4 is a separate contract, and as long as this contract is effective, the terms of the agreement must be followed, regardless of the fate of a separate, though related, agreement. In addition, this Court finds that there was no clear and unambiguous agreement to waive or supersede the U–4 agreement.

Many courts have upheld the validity of U–4 arbitration agreements with securities exchanges, even in cases where the employee never held the position of registered representative. *See, e.g., Gilmer,* 500 U.S. at 25 n. 2, 111 S.Ct. at 1651 n. 2. The Supreme Court, in fact, compelled arbitration in the case of a wage claim against a former employer in accordance with a registration statement with a securities exchange. *See Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

Since O'Donnell indicated on his U–4 that he was applying to qualify as a NASD registered representative, the Court must look to the NASD Code in order to determine the scope of the agreement.

### 2. NASD Rules Encompassed Employment Disputes Prior to October 1993

■ The crux of this dispute is the question of whether the October 1993 amendment to NASD rules was a change or a clarification in the then-existing Code. This is important because O'Donnell was fired before the amendment went into effect. The October 1993 amendment adds a specific clause, which includes employment disputes in the NASD Code, to "cure an existing ambiguity between the language of Section 8 . . . and Part I, Section 1." NASD Notice to Members 93–64. The Second Circuit has not ruled on this issue, and the two circuits which have done so disagree. The Seventh Circuit interprets the Code in a manner similar to the one O'Donnell's urges, while the Eleventh Circuit's interpretation resembles defendants' position.

The Seventh Circuit, which first decided this issue before the October 1993 amendment went into effect, rejected NASD's interpretation of its own Code and ruled that NASD's old Code did not cover employment disputes. *See Farrand v. Lutheran Bhd.,* 993 F.2d 1253 (7th Cir.1993) (Easterbrook, J.). The reason for the decision was the interaction of the two relevant sections of the Code. Section 8 formerly read:

> Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s), or in connection with the activities of such associated person(s), shall be arbitrated under this Code. . . .

Since FIC is a member of NASD and O'Donnell is a qualified registered representative, under § 8, the employment contracts would appear to fall into the category of "business of such member." However, § 8 is limited by Part I, § 1 which formerly read:

> This Code of Arbitration Procedure is prescribed . . . for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association . . .:
> (1) between or among members;
> (2) between or among members and public customers, or others; and

(3) between or among members, registered clearing agencies ...

There is no explicit reference to disputes between members and their employees unless the "others" in (2) could so be interpreted. The Seventh Circuit declined to do so since § 1 includes a subsection (3) which would have been included in "others" if a broad interpretation were to be given that word. Instead, the Court asked "What is the point of writing down a list of parties, only to sweep everything off the table with a comprehensive 'or others'? Language of this kind in a list usually means 'others' *similar to* preceding terms—here, perhaps, clients ...." *Farrand,* 993 F.2d at 1255 (emphasis in original).[2] The decision was affirmed, after a rehearing *per curium,* due to the lack of "an explanation by the NASD or SEC contemporaneous with the adoption of the Code in 1968, or any formal interpretation, by either body, since." *Farrand,* 993 F.2d at 1255.

The most recent circuit court decision, however, does not follow the lead of the Seventh Circuit. Instead, the Eleventh Circuit attempts to reconcile § 8 with Part I, § 1 and reads "others" to include employees. In this way, the Court "eliminates tensions in the NASD Code that occur under *Farrand,*" *Kidd v. Equitable Life Assurance Soc'y. of Am.,* 32 F.3d 516, 519 (11th Cir.1994), and follows the Supreme Court's "'healthy regard for the federal policy favoring arbitration....'" *Kidd,* 32 F.3d at 519 (quoting *Moses H. Cone Hosp.,* 460 U.S. at 24–25, 103 S.Ct. at 941). This reading makes more sense given the liberal federal policy towards arbitration.

In New York state courts, similar tensions exist. Some New York Supreme Court decisions have followed *Farrand. See F.N. Wolf & Co. v. Franek,* 2/15/94 N.Y.L.J. 24, (col. 5); *F.N. Wolf & Co. v. Brothers,* 5/19/94 N.Y.L.J. 29, (col. 2). And others have either disagreed with *Farrand* or followed *Kidd. See F.N. Wolf & Co. v. Bowles,* 160 Misc.2d 752, 610 N.Y.S.2d 757 (Sup.Ct.1994); *F.N. Wolf & Co. v. Egan,* 11/21/94 N.Y.L.J. 29, (col. 3).

The cases taking the Eleventh Circuit approach are more convincing for two reasons.[3] First, NASD had interpreted its Code to include employment disputes as early as 1987. *Bowles,* 610 N.Y.S.2d at 759 (citing Federal Register, Vol. 52, No. 55, p. 9232, March 23, 1987). Thus, "'NASD has taken the position that employment disputes are arbitrable under Section 8, but in order to clear up any ambiguity, it is proposing the changes.'" *Bowles,* 610 N.Y.S.2d at 759 (citing Federal Register, Vol. 58, No. 138, p. 39071, July 21, 1993). While the amendment, seen in a vacuum, would seem to be a change in the existing policy, when seen in the light of NASD's public announcement that it is a clarification, the Court should give credence to the intent of the maker of the Code.

Secondly, *Farrand* admits that interpreting "others" to mean employees is a reasonable interpretation. *Farrand,* 993 F.2d at 1255. The decision, however, glosses over the federal policy in favor of arbitration and takes a narrow view of the arbitration agreement. Such a limiting interpretation is not in accordance with the liberal policy outlined not only in the FAA but also in *Mitsubishi Motors Corp.* and *Moses H. Cone Memorial Hosp.*

In view of NASD's position, federal policy favoring arbitration, and ambiguity in the NASD Code, this Court follows the reasoning of *Kidd, Bowles* and *Egan.* O'Donnell's employment action is subject to arbitration.

### 3. Costs of Bringing this Motion

■ Defendants request that the Court impose on plaintiff the costs connected with bringing this motion. The Court assumes that defendants are referring to Rule 11 sanctions as they do not cite any authority for this request. Rule 11 provides for sanctions in the case of "unreasonable delay." Fed.R.Civ.Pro. 11(b)(1). While defendants were correct that the underlying action is subject to arbitration, the Court does not find that the issue was so clear that refusal immediately to submit to arbitration was unreasonable. The plaintiff may put the mov-

---

**2.** The Seventh Circuit reaffirmed this line of reasoning in *Kresock v. Bankers Trust Co.,* 21 F.3d 176 (7th Cir.1994), by refusing to compel the arbitration of a pre-amendment employment dispute.

**3.** In fact, a district court in Massachusetts has put forth similar reasons for not following *Farrand. The 'Strappes Group, Inc. v. Siedle,* 1993 WL 443926 (D.Mass.1993).

ants to the proof. *See Chisolm v. Kidder, Peabody Asset Management, Inc.,* 810 F.Supp. 479, 482 (S.D.N.Y.1992). The issue is far from a settled one. Both the Circuit Courts and New York State Courts are split on this issue. Plaintiff's actions were not unreasonable, much less egregious, and the Court, accordingly, declines to impose the costs of this motion on plaintiff.

## CONCLUSION

For the reasons stated above, the Court grants defendants' motion in part and denies it in part. The Court grants the motion to compel arbitration, and hereby orders plaintiff promptly to submit to the arbitration of plaintiff's claims. This Court also orders that the current action is stayed and that, upon completion of arbitration, the parties shall return to this Court, if necessary, for the purpose of resolving any remaining unsettled claims. The Court denies defendants' motion to impose the costs of the instant motion on plaintiff.

**SO ORDERED.**