from Congress than statutory language coupled with relevant legislative history, *see, e.g.* 137 Cong. Rec. S15,472--78 (daily ed. Oct. 30, 1991) (statement of Sen. Dole) (stating that the arbitration provision encourages arbitration, but "where the parties knowingly and voluntarily elect to use these methods"), to direct the courts to faithfully interpret this provision of the CRA. Further, the Supreme Court has already indicated that the identical statutory language, in a provision of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12212, has meaning. *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 82 n.2 (1998) ("Our conclusion that a union waiver of employee rights to a federal judicial forum for employment discrimination claims must be clear and unmistakable means that, absent a clear waiver, it is not 'appropriate,' within the meaning of this provision of the ADA, to find an agreement to arbitrate."). The majority's opinion instead renders the statutory language meaningless. Reasonable jurists can, and will, dispute whether any particular facts or category of cases are "appropriate" for an agreement to arbitrate; I do not agree, however, that we have the power to "find[] it would be unwise" to apply the statutory language.

   Accordingly, I respectfully dissent.

---

so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand. As we recognized recently in *United States v. Estate of Romani*, "a specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it has not been expressly amended."
*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 120 S. Ct. 1291, 1306 (2000) (internal citation omitted).

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0283P (6th Cir.)
File Name: 00a0283p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROBERT L. HASKINS, SR.,
           *Plaintiff-Appellee,*

           *v.*                                    No. 99-3486

PRUDENTIAL INSURANCE
COMPANY OF AMERICA, a/k/a
The Prudential Insurance and
Financial Services,
           *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 98-07711—James G. Carr, District Judge.

Argued: March 8, 2000

Decided and Filed: August 28, 2000

Before: BOGGS and COLE, Circuit Judges; ZATKOFF,[*]
                  Chief District Judge.

---

   [*] The Honorable Lawrence P. Zatkoff, Chief United States District Judge for the Eastern District of Michigan, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** Carole S. Katz, REED, SMITH, SHAW & McCLAY, Pittsburgh, Pennsylvania, for Appellant. Francis J. Landry, WASERMAN, BRYAN, LANDRY & HONOLD, Toledo, Ohio, for Appellee. **ON BRIEF:** Carole S. Katz, REED, SMITH, SHAW & McCLAY, Pittsburgh, Pennsylvania, Fritz Byers, Toledo, Ohio, for Appellant. Francis J. Landry, WASERMAN, BRYAN, LANDRY & HONOLD, Toledo, Ohio, for Appellee.

ZATKOFF, D. J., delivered the opinion of the court, in which BOGGS, J., joined. COLE, J. (pp. 21-24), delivered a separate dissenting opinion.

---

**OPINION**

---

LAWRENCE P. ZATKOFF, Chief District Judge. Plaintiff-Appellant Robert L. Haskins ("Haskins") brought this action against his former employer, Defendant-Appellant Prudential Insurance Company of America ("Prudential"). In his complaint, Haskins alleged that he was unlawfully terminated because of his age and race. In response to the complaint, Prudential filed a motion to dismiss Haskins' complaint and compel arbitration, which the district court denied. For the reasons that follow, we **REVERSE** the judgment of the district court.

### I. BACKGROUND

Haskins is a fifty-six year-old African-American who was employed by Prudential from 1980 until June 12, 1997. Haskins claims that on this date, he was unlawfully terminated because of his age and race. During his employment with Prudential, Haskins was represented by the

to arbitration, we would have had little difficulty in finding that Rosenberg had agreed to arbitrate her employment discrimination claims within the meaning of the 1991 CRA.").

Second, the majority's opinion reads the "appropriate" language of the CRA to be superfluous; a clearly disfavored method of statutory interpretation. "Judges should hesitate . . . to treat [as surplusage] statutory terms in any setting . . . ." *Ratzlaf v. United States*, 510 U.S. 135, 140-141 (1994); *see also United States v. Alaska*, 521 U.S. 1, 59 (1997) ("The Court will avoid an interpretation of a statute that 'renders some words altogether redundant.'") (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995)). Congress specifically legislated, in Section 118 of the CRA, that arbitration of civil rights claims is encouraged "[w]here appropriate and to the extent authorized by law." As the *Rosenberg* court noted, "[a]t a minimum the words 'to the extent authorized by law' must mean that arbitration agreements that are unenforceable under the FAA are also unenforceable when applied to claims under Title VII and the ADEA. Under the FAA, arbitration agreements are enforceable 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Rosenberg*, 170 F.3d at 19. As to the first part of the CRA clause at issue, the majority states that it declines "to require a heightened standard that arbitration be 'appropriate' without a clear Congressional requirement to do so," and decides the case on contract law grounds.[2] I can think of no clearer signal

---

[2]To the extent that the majority suggests that the dictates of the FAA, which was enacted in 1947 and was meant to put arbitration agreements generally on the same footing as other contracts, *see, e.g., American Airlines, Inc. v. Louisville & Jefferson County Air Bd.*, 269 F.2d 811, 816 (6th Cir. 1959), trumps language in the CRA, which was enacted in 1991 and specifically addressed agreements to arbitrate civil rights claims, I disagree.

The "classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute." This is particularly

rights to a judicial forum for employment discrimination claims when she signed the U-4 form," *id*. at 1095; an admittedly high standard which the *Rosenberg* court declined to adopt as well. Further, in *Rosenberg*, the court rejected the plaintiff's argument that the arbitration agreement was an unenforceable contract of adhesion or that the facts alleged supported other relief under contract law doctrines such as fraud or oppressive conduct. *See Rosenberg*, 170 F.3d at 17. Nor do the two Michigan state cases cited within *Beauchamp* – *Scholz v. Montgomery Ward & Co.*, 468 N.W.2d 845 (Mich. 1991) and *Sponseller v. Kimball*, 224 N.W. 359 (Mich. 1929) -- provide more support for the majority's analysis of Haskins's case.[1] In both of those cases, had the plaintiffs read the documents provided to them, they would have clearly been informed of the facts that they protested in their suit. For example, in *Scholz*, the case of more recent vintage, the Michigan Supreme Court rejected the argument of a plaintiff, who was fired for her refusal to work on Sundays, that she be able to enforce a prior oral agreement not to work on Sundays, even after she signed a subsequent written agreement that she was an at-will employee. *See Scholz*, 468 N.W.2d at 846. Haskins, however, received no like opportunity to inform himself of the claims which were to be subjected to compelled arbitration. *See Rosenberg*, 170 F.3d at 18 ("Had the U-4 provided for arbitration of all disputes, or given explicit notice that employment disputes were subject

---

[1] Under the FAA, we are to "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). State law resolves questions "concerning the validity, revocability, or enforceability of contracts generally" *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987), and works together with the "body of federal substantive law of arbitrability" created by the FAA. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Cases under the FAA do not clearly require us to employ the contract law principles of the state in which the contract or claim arose – in Haskins's case, Ohio – but if I were to undertake a contract analysis in this case, I would also use Ohio state law. *See, e.g., First Options*, 514 U.S. at 944 (applying the law of the state, Illinois, in which the case arose).

United Food and Commercial Worker's International Union. Through the course of his employment with Prudential, Haskins sold instruments registered with the Securities and Exchange Commission and his selling activities were regulated by the National Association of Securities Dealers ("NASD"). Pursuant to NASD requirements and as a condition of continued employment with Prudential, on June 17, 1983, Haskins executed a Uniform Application for Securities Industry Registration or Transfer, which is commonly known as a U-4 Form. The U-4 Form contained the following provision concerning arbitration:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Question 8.

This clause did not specifically delineate the types of claims subject to arbitration. However, Question 8 on the U-4 Form, which is referred to in the above-quoted arbitration provision, asked Haskins to state the securities organizations with which he planned to register. In response to this question, Haskins indicated he planned to register with the NASD. One of the rules in the NASD Code stated that the following matters shall be arbitrated:

> [A]ny dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member . . . .

NASD Manual, Code of Arbitration Procedure Rule 10101.[1]

---

[1] Subsequent to Haskins filing suit in this case, the NASD amended its rules. As of January 1, 1999, "statutory employment-related discrimination claims are arbitrable if the parties agree to arbitration after the dispute has been raised, but, absent such agreement, arbitration is not

The U-4 Form signed by Haskins also contains two acknowledgments that he understood the contents of the U-4 Form. The first acknowledgment states: "I hereby certify that I have read and understand the foregoing statements and that my responses are true and complete to the best of my knowledge." The second acknowledgment reads as follows:

> I hereby apply for registration with the organizations and states indicated in Question 8 and, in consideration of such organizations and states receiving and considering my application, I submit myself to the jurisdiction of such states and organizations and hereby certify that I have read, understand and agree to abide by, comply with, and adhere to all the provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the states and organizations as they are and may be adopted, changed or amended from time to time. . . .

Haskins' signature appears in the space provided under these acknowledgments. Finally, another provision in the U-4 Form was the employer certification, which stated:

> To the best of my knowledge and belief, the applicant is currently bonded where required, and, at the time of approval, will be familiar with the statute(s), constitution(s), rules and by-laws of the agency, jurisdiction or self-regulatory organization with which this application is being filed, and the rules governing registered persons, and will be fully qualified for the position for which application is being made herein.

---

compulsory." *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 363 n.1 (7th Cir. 1999), *cert. denied*, 120 S. Ct. 44 (1999) (citing SEC Rel. No. 34-40109, 63 Fed. Reg. 35299). However, because Haskins' complaint was filed prior to January 1, 1999, this amendment is not applicable to his case. *See id.*; *Hart v. Canadian Imperial Bank of Commerce, CIBC, Inc.*, 43 F. Supp. 2d 395, 399 (S.D.N.Y. 1999).

---

## DISSENT

---

R. GUY COLE, JR., Circuit Judge, dissenting. On the merits of Haskins's argument, I believe that the proper analysis of this case is found in the First Circuit's opinion in *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999), and that requiring compulsory arbitration of Haskins's civil rights claims is not "appropriate," within the meaning of the Civil Rights Act of 1991 ("CRA"). As in *Rosenberg*, "[t]he agreement did not state that [the plaintiff] agreed to arbitrate all disputes, or even any dispute. The agreement only required [the plaintiff] to arbitrate any dispute that the [registering organization's] rules, constitution, or bylaws . . . required to be arbitrated." *Rosenberg*, 170 F.3d at 18. The U-4 agreement was signed by Haskins. The U-4 was also signed by a Prudential representative who attested that Haskins was familiar with the rules of the organization referred to in the U-4 agreement. In fact, Haskins was neither given a copy of these rules, nor were these rules explained to him. This lack of an informed waiver of his judicial forum for a civil rights claim, coupled with the allegedly false attestation by Prudential's representative, lead me to believe that this narrow situation is one in which enforcement of a compelled arbitration clause waiving Haskins's judicial forum for his employment discrimination claim is inappropriate under the CRA.

In addition, I believe the majority's analysis makes two critical missteps. First, the majority's contract law analysis – which it states is the holding of its opinion – is consistent with *Rosenberg*. The majority states that it adopts the contract law holding contained in *Beauchamp v. Great West Life Assurance Co.*, 918 F. Supp. 1091 (E.D. Mich. 1996). In *Beauchamp*, the plaintiff, who alleged "merely that she [did] not remember reading [the U-4] language," 918 F. Supp. at 1098-99, argued that she had to "knowingly relinquish her

from a party signing a U-4 Form to read and understand the agreement.  We cannot endorse such a rule.

Returning to the present case, Haskins signed the U-4 Form.  However, he claims that since he never received a copy of the NASD rules, he was never informed of the rights he would surrender by agreeing to arbitrate and therefore should not be required to arbitrate his claims.  However, ignorance as to the terms of the U-4 Form is no defense.  Because Haskins signed the U-4 Form, which informed him that he would be bound by the NASD rules requiring him to arbitrate his claims arising out of termination of his employment, and because there has been no showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, Haskins is required to arbitrate his claims.

## V.  CONCLUSION

For the above-stated reasons, the district court erred in denying Prudential's motion to compel arbitration.  The decision of the district court is **REVERSED** and the matter is **REMANDED** to the district court for entry of an order dismissing the case and compelling arbitration.

Prudential's branch office manager signed under this provision in the U-4 Form.

On December 4, 1998, Haskins filed a complaint against Prudential, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, as well as other claims.  Soon after Haskins filed his complaint, Prudential filed a motion to dismiss the complaint and compel arbitration.  Prudential argued that Haskins had agreed to arbitrate the claims presented in his lawsuit and therefore arbitration should be compelled. Haskins countered that he should not be compelled to arbitrate his claims against Prudential because he was never provided with a copy of the NASD Code, no agent of Prudential ever familiarized him with the NASD Code, and the certification of Prudential's branch manager was untrue.  Haskins also argued that compelling arbitration would interfere with his collective bargaining rights.

In its opinion, the district court first decided that compelling arbitration would not interfere with Haskins' collective bargaining rights.[2]    Second, the district court pointed out that Haskins did not discuss the arbitration clause

---

[2]Before the district court and on appeal, Haskins argues that compelling arbitration "would interfere with and foster tensions" with his collective bargaining rights.  However, the U-4 Form signed by Haskins is not an agreement between him and Prudential.  Instead, it is a contract with the securities exchanges.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n.2 (1991).  In denying Haskins' claim, the district court relied upon *O'Donnell v. First Investors Corp.*, 872 F. Supp. 1274, 1277 (S.D.N.Y. 1995), which held that "[t]he U-4 . . . is not a contract with [the employer] but rather an application to qualify with various security exchanges.  The U-4 is a separate contract, and as long as this contract is effective, the terms of the agreement must be followed, regardless of the fate of a separate, though related, agreement."  The court agrees with the findings of the district court on this issue and concludes that the U-4 Form signed by Haskins is an agreement between him and the NASD and therefore remains in effect even though Haskins has entered into a separate collective bargaining agreement.

with any of Prudential's agents and that he did not receive a copy of the NASD Code. Because Haskins did not discuss the arbitration clause with one of Prudential's agents, nor did he receive a copy of the NASD rules, the district court concluded that Haskins "was not aware of the statutory and state rights he surrendered by filling out Question 8 and signing the U-4 Form."

The district court then denied Prudential's motion, relying upon *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999), in which the First Circuit found that under the circumstances before it, compelling arbitration was not "appropriate" under the 1991 Civil Rights Act. The district court employed the standard set forth in *Rosenberg* and found that compelling arbitration would not be "appropriate," stating:

> As in *Rosenberg*, plaintiff signed a U-4 Form containing an Arbitration Clause which did not list the types of disputes covered, instead incorporating the rules, constitutions, and by-laws of NASD. The NASD Code, like the [New York Stock Exchange] Rules in *Rosenberg*, requires arbitration of controversies arising out of employment or termination of employment. The U-4 Form also contains the same Employer Certification provision as the U-4 agreement in *Rosenberg*. Like the plaintiff in *Rosenberg*, [Haskins] did not receive a copy of the NASD Code and no agent of [Prudential] discussed the arbitration clause with him.
>
> The Employer Certification, as in *Rosenberg*, contemplates steps by [Prudential] which were not taken. Therefore, [Haskins] successfully argues that the arbitration agreement is not "appropriate" under Title VII and the ADEA.

Subsequent to the district court's decision, Prudential filed a motion for interlocutory appeal. This motion was granted in part and denied in part by this court. Although discovery

*Id.* at 23 (Wellford, J., dissenting) (footnote and citations omitted). *See also Ludwig v. Equitable Life Assurance Society of the U.S.*, 978 F. Supp. 1379, 1382 (D. Kan. 1997) ("regardless of whether plaintiff received the NASD Code, the potential breadth of the arbitration provision immediately put her on notice that any and all employment disputes were subject to mandatory arbitration"); *Herko v. Metropolitan Life Ins. Co.*, 978 F. Supp. 141, 147 (W.D.N.Y. 1997) (because there were no allegations of any wrongdoing in execution of the U-4 Form, the plaintiff's claims must be arbitrated because she "is conclusively presumed to have known that disputes between [herself] and her employer would be subject to arbitration" despite the fact that she was not provided with the NASD rules).

Finally, the dissent in *Rosenberg* discussed the term "appropriate," which the First Circuit used as its standard when deciding whether arbitration should be compelled. Judge Wellford wrote: "Congress, in using the expression '[w]here [arbitration is] appropriate' may well have intended some threshold determination that the type of employee-employer dispute be amenable to resolution by arbitration." *Rosenberg*, 170 F.3d at 22 (Wellford, J., dissenting). Judge Wellford's point is well-taken. It is not clear how Congress intended the term "appropriate" to apply in arbitration cases. Consequently, this court finds that it would be unwise to require a heightened standard that arbitration be "appropriate" without a clear Congressional requirement to do so, especially in light of the strong federal policy favoring arbitration.

In sum, we disagree with the decision in *Rosenberg* to hold the employer completely at fault for failing to provide an employee with a copy of the applicable exchange organization's rules when the arbitration provision in the U-4 Form was plain and broad, such that a signing party should have been on notice that his claims could have been subject to arbitration. Such a decision removes all responsibility

The court in *Rosenberg* also placed great emphasis on the fact that the plaintiff in that case was never provided with a copy of the NYSE rules, which provided for arbitration of the claims she had raised. *See Rosenberg*, 170 F.3d at 6, 20. The court stated:

> [The] arbitration agreement did not by itself define the range of claims subject to arbitration, even though [the defendant] expressly represented that [the plaintiff] would be advised of the rules. It referred only to arbitration of such claims as were required to be arbitrated by the NYSE rules. But those rules were not given to [the plaintiff] or described to her. The question then becomes which party should bear the risk of her ignorance. Given Congress's concern that agreements to arbitrate employment discrimination claims should be enforced only where "appropriate," a concern not expressed in the FAA or at common law, [the defendant] should, we believe, bear that risk.

*Id.* at 19 (footnotes omitted). However, we again believe that this overlooks the fact that the U-4 Form provided to both the plaintiff in *Rosenberg* and, in this case, to Haskins, clearly requires that certain claims shall be subject to arbitration. The dissent in *Rosenberg* succinctly summarizes our thoughts on this point:

> I would hold that [the plaintiff] was presumed to understand, and to be bound by, the plain terms of her U-4 agreement even if she were not furnished copies of the exchange rules at the time of signing. I believe the agreement was broad and plain and that it put [the plaintiff] on notice that she agreed to arbitrate at the outset "any dispute, claim or controversy" with [the defendant] under exchange rules. If she "did not make herself aware of the existence or scope of [the arbitration] clause [in the U-4 agreement], she did so at her own peril." She is "presumed to know the contents of the signed agreement" as well as its reasonable import.

was allowed to continue, this court ordered that no dates for pretrial motions or trial should be scheduled. This appeal followed.

## II.  STANDARD OF REVIEW

A district court's determination as to whether a dispute is arbitrable is subject to *de novo* review. *See E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 454 (6th Cir. 1999) (citing *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 143 F.3d 1033, 1037 (6th Cir. 1998)). Further, the court is mindful that in passing the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, Congress' "preeminent concern" was to enforce private agreements to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Finally, in deciding this matter, the court considered that there is "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

## III.  LEGAL STANDARDS

The main issue to be decided in this case is whether Haskins should be compelled to arbitrate his claims even though the U-4 Form did not specifically delineate the claims subject to arbitration and Prudential did not provide Haskins with a copy of the NASD rules pertaining to arbitration. In signing the U-4 Form, Haskins agreed to "arbitrate any dispute, claim or controversy that may arise between" himself and his firm "that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which [Haskins] register[ed]." Prudential seeks to hold Haskins to this agreement. Haskins argues that since he never received a copy of the NASD Code, nor did any of Prudential's agents discuss the arbitration clause with him, he should not be required to arbitrate his claims against Prudential.

This is an issue of first impression before this court. Although several courts have adjudicated matters involving

facts almost identical to those presented here, they have done so in three different ways. The Ninth Circuit has concluded that "a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has *knowingly* agreed to submit such disputes to arbitration." *Prudential Insurance Co. of America v. Lai*, 42 F.3d 1299, 1305 (9th Cir. 1994), *cert. denied*, 516 U.S. 812 (1995) (emphasis added). The First Circuit has concluded as the district court did in this case, finding that arbitration may only be compelled in *appropriate* cases. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 20 (1st Cir. 1999). Finally, a district court in this Circuit has held that "a party is generally chargeable with knowledge of the existence and scope of an arbitration clause within a document signed by that party, in the absence of fraud, deception, or other misconduct that would excuse the lack of such knowledge." *Beauchamp v. Great West Life Assurance Co.*, 918 F. Supp. 1091, 1098 (E.D. Mich. 1996). The following discussion will examine each of the three standards set forth above.

## A. Lai's "Knowing" Standard

In *Prudential Insurance Co. of America v. Lai*, 42 F.3d 1299 (9th Cir. 1994), the Ninth Circuit was confronted with a factual situation similar to the present case. The plaintiffs in that case were employed as sales representatives by the defendant. The plaintiffs had signed U-4 Forms requiring that they "arbitrate any dispute, claim or controversy that . . . is required to be arbitrated under the rules, constitutions, or bylaws of the organizations with which [the plaintiffs] register[ed]." The plaintiffs later registered with the NASD, which required "that disputes 'arising in connection with the business' of its members be arbitrated." The plaintiffs claimed that when they signed the U-4 Forms, "[a]rbitration was never mentioned, and plaintiffs were never given a copy of the NASD Manual, which contain[ed] the actual terms of the arbitration agreement." The plaintiffs sued the defendant, claiming that they had been sexually harassed by their immediate supervisor. The defendants filed a motion to

175, 183 n.2 (3rd Cir. 1998) ("respectfully disagree[ing] with the decision of the court in *Lai*"); *see also Hart v. Canadian Imperial Bank of Commerce, CIBC, Inc.*, 43 F. Supp. 2d 395, 400 (S.D.N.Y. 1999) (rejecting the "heightened standard" announced in *Lai*); *Battle v. Prudential Ins. Co. of America*, 973 F. Supp. 861, 866 (D. Minn. 1997) ("This Court is . . . not persuaded that the court's analysis in *Lai* is sound and supported by law and declines to following its reasoning as well."); *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F. Supp. 1460, 1474 (N.D. Ill. 1997) (finding the decision in *Lai* "inconsistent" with the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)); *Johnson v. Hubbard Broadcasting, Inc.*, 940 F. Supp. 1447, 1455 (D. Minn. 1996) (finding the logic in *Lai* "unconvincing" and noting that the decision had received "widespread criticism"); *Beauchamp*, 918 F. Supp. at 1096 (*see* discussion, *supra*, IV.C.); *Maye v. Smith Barney Inc.*, 897 F. Supp. 100, 107 (S.D.N.Y. 1995) (noting that *Lai's* reasoning "has been criticized by courts in this and other Circuits as contrary to Supreme Court precedent and as based on citation of inadequate legislative history").

As to the decision in *Rosenberg*, it is a more recent decision than *Lai*, and consequently, fewer courts have had an opportunity to pass upon the decision. Nonetheless, we respectfully disagree with the decision reached by the First Circuit in that case. Initially, the court noted that "[h]ad the U-4 provided for arbitration of all disputes, or given explicit notice that employment disputes were subject to arbitration," then it would have compelled arbitration. *See Rosenberg*, 170 F.3d at 18. However, such a statement gives no weight to the language in the U-4 Form, which in *Rosenberg* and in the present case clearly and plainly provides for arbitration. As noted during the discussion of the facts in the present case, the U-4 Form which was signed by Haskins contains two acknowledgments that he understood the contents of the U-4 Form. The simple fact that the arbitration provision in the U-4 Form did not provide for arbitration of "all disputes" or "employment disputes" should not prevent arbitration.

absence of fraud, deception, or other misconduct that would excuse the lack of such knowledge.

*Beauchamp*, 918 F. Supp. at 1098.

## IV. ANALYSIS

After reviewing each of the three rulings in which courts have examined the issue presently before this court, we adopt the standard announced in *Beauchamp* and find that absent a showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, a court must enforce a contractual agreement to arbitrate. The court finds that adoption of the standard announced in *Beauchamp* is superior to the standards set forth in *Rosenberg* and *Lai* because it does not plainly ignore long-standing rules of contract law.

Were the court to adopt the rationale set forth in either *Rosenberg* or *Lai*, it would in effect hold that a party to a contract is not chargeable with the knowledge of the terms contained in the contract. Further, adopting either *Rosenberg* or *Lai* would serve to release a party from his obligations under a contract with absolutely no basis in contract law. The court is not prepared to abandon the long-standing principles of contract law, such as:

> [O]ne who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party. Thus, ignorance of the contents of a contract expressed in a written instrument does not ordinarily affect the liability of one who signs it or who accepts it otherwise than by signing it.

17A Am. Jur. 2d Contracts § 224 (1991).

Further, as to the Ninth Circuit's decision in *Lai,* it has been rejected by nearly every court that has had an opportunity to pass upon it. *See Seus v. John Nuveen & Co., Inc.*, 146 F.3d

compel arbitration, which was granted by the district court. *Id.* at 1301.

On appeal, the plaintiffs argued that they should not be compelled to arbitrate their claims because they did not knowingly agree to arbitrate them. The Ninth Circuit agreed and reversed the district court, holding:

> Congress intended there to be at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes. Such congressional intent, which has been noted in other judicial decisions, is apparent from the text and legislative history of Title VII.

*Id.* at 1304.

In reaching this holding, the Ninth Circuit looked to the history of the Civil Rights Act of 1991, noting that "[s]ection 118 of that Act states: 'Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolutions including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.'" *Lai*, 42 F.3d at 1304 (quoting § 118 of Pub. L. 102-166, set forth in the notes following 42 U.S.C. § 1981 (Supp. 1994)). The court also noted that the goal was to increase the number of remedies available to plaintiffs in civil rights cases:

> Section 216 [of the 1991 Act] encourages the use of alternative means of dispute resolution . . . where appropriate and to the extent authorized by law. . . . The committee emphasizes . . . that the use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by Title VII. Thus, for example, the committee believes that any agreement to submit disputed issues to arbitration, whether in the context of a collective bargaining

agreement or in an employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of Title VII. This view is consistent with the Supreme Court's interpretation of Title VII in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974). The committee does not intend for the inclusion of this section to be used to preclude rights and remedies that would otherwise be available.

*Lai*, 42 F.3d at 1304 (quoting H.R. Rep. No. 40(I), 102nd Cong. 1st Sess., reprinted in 1991 U.S.C.C.A.N. 549, 635). The Ninth Circuit also referred to Senator Dole's comments on § 118, in which he said that this section encouraged arbitration only when "the parties knowingly and voluntarily elect to use these methods." *Lai*, 42 F.3d at 1304 (quoting 137 Cong. Rec. S. 15472, S. 15478 (daily ed. Oct. 30, 1991, statement of Sen. Dole)).

Finding that the plaintiffs could be compelled to arbitrate their claims if they "knowingly" agreed to arbitrate, the Ninth Circuit concluded:

> Th[e] congressional concern that Title VII disputes be arbitrated only "where appropriate," and only when such a procedure was knowingly accepted, reflects our public policy of protecting victims of sexual discrimination and harassment through the provisions of Title VII and analogous state statutes. This is a policy that is at least as strong as our public policy in favor of arbitration. Although the Supreme Court has pointed out that plaintiffs who arbitrate their statutory claims do not "forego the substantive rights afforded by the statute," the remedies and procedural protections available in the arbitral forum can differ significantly from those contemplated by the legislature. In the sexual harassment context, these procedural protections may be particularly significant. *Thus, we conclude that a Title VII plaintiff may only be forced to forego her statutory remedies and*

*Beauchamp*, 918 F. Supp. at 1096. The district court then proceeded to dismantle the Ninth Circuit's opinion in *Lai*. The district court discussed a major problem with the Ninth Circuit's holding:

> [T]he Ninth Circuit's opinion fails to consider that Congress would be unlikely to turn a venerable rule of contract law on its ear without an express statement that it was doing so.
>
> It is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence. Accordingly, this estops the party from avoiding the contract on the ground that the party was ignorant of the contract provisions. . . . The stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge . . . in the absence of circumstances fairly excusing his failure to inform himself.
>
> The Ninth Circuit's rule that a party to an arbitration agreement is not chargeable with knowledge concerning the existence and scope of that agreement with respect to Title VII claims is directly contrary to this well-settled rule of contract law.

*Beauchamp*, 918 F. Supp. at 1097-98 (citations omitted). *See also Seus v. John Nuveen & Co., Inc.*, 146 F. 3d 175, 184 (3rd Cir. 1998) (holding that "[n]othing short of a showing of fraud, duress, mistake or some other ground recognized by the law applicable to contracts generally would have excused the district court from enforcing Seus' agreement [to arbitrate]").

Finally, the court in *Beauchamp* concluded:

> Accordingly, this court chooses not to treat [*Lai*] as persuasive precedent, instead holding, consistently with *Gilmer*, that a party is generally chargeable with knowledge of the existence and scope of an arbitration clause within a document signed by that party, in the

rules, constitutions, or by-laws of the organizations with which [the plaintiff] register[ed]." The plaintiff subsequently registered with the NASD. As explained by the district court, "Part I of the NASD Code of Arbitration Procedure states that the code was created 'for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association. . . .'" Further, the NASD code required arbitration of any disputes between members in connection with the business of the members. Although the plaintiff remembered that she was required to sign a U-4 Form as a condition of her employment, she did not remember reading the above-quoted language from the U-4 Form. *See Beauchamp*, 918 F. Supp. at 1093-94.

After bringing a complaint with the EEOC, the plaintiff brought suit against the defendant. The plaintiff alleged that she was repeatedly passed over for promotions due to her age and gender. In response to the plaintiff's complaint, the defendant filed a Motion to Compel Arbitration. *See id*.

Before the district court, the plaintiff relied upon *Lai's* "knowingly" standard, arguing that for the arbitration clause in the U-4 Form to be applicable, she must have been informed about the arbitration clause and its applicability to her case. *See Beauchamp*, 918 F. Supp. at 1095. The district court rejected the Ninth Circuit's holding in *Lai*, stating:

Fortunately, [*Lai*] is not binding precedent because this court is not persuaded by its reasoning. The portions of the legislative history relied upon by the Ninth Circuit are slender reeds upon which to rest the weighty and novel conclusion that an arbitration clause is only binding when the claimant has actual knowledge that his particular employment discrimination claims will be covered by the agreement. This conclusion flies in the face of the language of the Civil Rights Act of 1991, the Supreme Court's opinion in *Gilmer*, and fundamental principles of contract law.

*arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration.*

*Lai*, 42 F.3d at 1305 (footnote and citations omitted) (emphasis added). Applying this standard to the case before it, the Ninth Circuit concluded that the plaintiffs "were not bound by any valid agreement to arbitrate these employment disputes, because they did not knowingly contract to forego their statutory remedies in favor of arbitration." *Id*.

## B. Rosenberg's "Appropriate Standard"

In *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999), the First Circuit was also confronted with a factual situation nearly identical to the present case. The plaintiff was hired by the defendant as a financial consultant. As part of the application process, the plaintiff was required to fill out a U-4 Form which contained the following language under the heading "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY":

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

*Rosenberg*, 170 F.3d at 4. Under Item 10, the plaintiff noted the various securities organizations with which she intended to register, which included the NASD and the NYSE. In the U-4 Form, the plaintiff's supervisor certified that the plaintiff would be familiar with the applicable rules by the time her U-4 Form was approved. The NYSE rules provided that the plaintiff agreed to arbitrate any dispute arising out of her employment or termination of her employment. However, the certification was untrue, as the plaintiff was not provided with any rules of the NYSE or the NASD. After working for the

defendant for two years, the plaintiff was terminated. Subsequent to her termination, the plaintiff filed a discrimination claim against the defendant. The defendant filed a motion to compel arbitration with the district court, which was denied, so the defendant appealed the district court's decision. *See id.* at 4-7.

Initially, the First Circuit reviewed the "knowing" standard set forth in *Lai* and stated that there was a dispute between circuits as to whether this standard should apply.[3] Instead of determining whether a "knowing" standard should apply, the court looked to the language of the 1991 Civil Rights Act (CRA). The court noted that the "knowing and voluntary language" relied upon by *Lai* was nowhere in the language of the CRA. Instead, the First Circuit relied upon the following language in the CRA: "[w]here *appropriate* and to the extent authorized by law, . . . arbitration . . . is encouraged to resolve disputes arising under [these laws]." *Rosenberg*, 170 F.3d at 18-19 (quoting 1991 Civil Rights Act § 118, 105 Stat. at 1081) (emphasis added).

After reviewing the facts of the case, the First Circuit concluded that compelling arbitration in the case would be "inappropriate," because:

---

[3] In *Rosenberg*, the First Circuit explained that there is a split amongst the circuits as to whether an employee is entitled to a "heightened level of protection" when determining whether the employee has waived his rights to a judicial forum in favor of arbitration. The First Circuit found that the Supreme Court had not directly addressed the issue, the Ninth Circuit had adopted a "knowing" standard, the Third and Eighth Circuits had rejected a heightened standard, and the Seventh Circuit recognized the issue but found it unnecessary to address it. *See Rosenberg*, 170 F.3d at 18 (citing *Renteria v. Prudential Ins. Co. of America*, 113 F.3d 1104, 1105-06 (9th Cir. 1997); *Lai*, 42 F.3d at 1305; *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 183-84 & n.2 (3rd Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 838 (8th Cir. 1997); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997)).

[the defendant] never provided [the plaintiff] with a copy of the rules and [the defendant] has provided no evidence it made [the plaintiff] familiar with the rules as to arbitration. [The defendant's] failure runs afoul of the mutual understandings. Since the arbitration requirement stems from the NYSE Rules and the U-4 Form requires that the employee be "familiar with" the rules and thus with the requirement for arbitration of employment claims, we think that [the defendant's] inaction undercuts the imposition of an arbitration requirement. The NYSE rules contemplated that [the defendant] certify to it that, at least as of the time of NYSE approval of [the plaintiff's] application, [the plaintiff] be "familiar" with the rules including the rules that all employment disputes be arbitrated. [The defendant's] failure [to make the plaintiff familiar with the rules], we believe, makes it *inappropriate* to enforce the provision.

*Rosenberg*, 170 F.3d at 20 (citation omitted) (emphasis added).

Because the defendant failed to make information concerning arbitration available to the plaintiff, the court concluded that the district court correctly denied the defendant's motion to compel arbitration. However, the court did find that if the defendant had "taken the modest effort required to make relevant information regarding the arbitrability of employment disputes available to [the plaintiff] as it committed itself to do, it would have been able to compel [the plaintiff] to arbitration." *Rosenberg*, 170 F.3d at 21.

## C. Beauchamp's Contract Law Standard

In *Beauchamp v. Great West Life Assurance Co.*, 918 F. Supp. 1091 (E.D. Mich. 1996), the district court dealt with a similar fact pattern. The plaintiff signed a U-4 Form which stated that she "agree[d] to arbitrate any dispute, claim, or controversy . . . that is required to be arbitrated under the